IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

THOUSAND OAKS BARREL CO. LLC
a Virginia Limited Liability Company,

Plaintiff,

v.

THE UNINCORPORATED ASSOCIATIONS
IDENTIFIED IN SCHEDULE A,

Defendants.

Civil Action No. 1:24-cv-2080- CMH-LRV

PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR DEFAULT JUDGMENT

Plaintiff Thousand Oaks Barrel Co., LLC ("Thousand Oaks" or "Plaintiff") hereby files

this Memorandum in Support of its Motion for Default Judgment under Fed. R. Civ. P. 55(a)

against the following Schedule A Defendants in default (the "Defaulting Defendants.") Plaintiff

seeks entry of default judgment against certain Defendants identified in the Clerk's Entry of

Default (Docket No. 114) and Plaintiff's Motion filed herewith.  The Verified Complaint initially

identified 107 Defendants (*See* Dkt. No. 1-2 (Schedule A listing Defendants).)  During this

litigation, Plaintiff filed notices of voluntary dismissal with respect to many of the entities named

as Defendants and the Court granted those dismissal requests.[1]  Thus, Plaintiff's Motion for

---

[1] *See* Dkt. No. 33 (dismissing Defendant No. 20); Dkt. No. 37 (dismissing Defendant No. 65); Dkt. No. 38 (dismissing Defendant No. 67); Dkt. No. 39 (dismissing Defendant No. 52); Dkt. No. 83 (Dismissing Defendants Nos. 27, 39, 60, 11, 58, 1, 68, 73, 64, 8, 15, 53, 54, 72, 28, 56, 43, 31, 61, 41, 42, 4, 40, 44, 5, 69, 29, 13, 2, 16, 36, 66, 62, 71, and 6); Dkt. No. 96 (dismissing

1

Default Judgment applies to the following fifty-one remaining Defendants (collectively "Defaulting Defendants"):

| Def. # | Defendant Name |
|---|---|
| 3 | FengQiLinLang |
| 7 | Moskiboly US |
| 9 | Ruihailu |
| 10 | BARREL & LEAF |
| 12 | THOMSELEUS |
| 14 | Hyper Bloom |
| 19 | Dignity Boutique |
| 22 | GOG Green |
| 23 | YU CONG |
| 24 | Golden Autumn October Event |
| 25 | Fadanny |
| 32 | J30655'shop |
| 35 | Legendary instrument |
| 37 | HK Atti |
| 38 | Qiaomi Shop |
| 45 | caleforra |
| 46 | CRILANO |
| 47 | private cipher |
| 48 | BIHAIT |
| 50 | Comfort Under |
| 57 | Biobubana Direct |
| 59 | HualinWM store |
| 63 | do2top |
| 70 | shnoopshop |
| 74 | JR Bar Supplies Store |

Defendant Nos. 17, 34, 51, and 26); Dkt. No. 101 (dismissing Defendant Nos. 34, 51, and 26); Dkt. No. 104 (dismissing Defendant No. 30); Dkt. No. 105 (dismissing Defendant No. 18); Dkt. No. 107 (dismissing Defendant No. 55); Dkt. No. 109 (NOTICE of Voluntary Dismissal of Defendant No. 97); Dkt. No. 110 (NOTICE of Voluntary Dismissal of Defendant No. 21); Dkt No. 111 (NOTICE of Voluntary Dismissal of Defendant No. 33); and Dkt. No. 115 (NOTICE of Voluntary Dismissal of Defendants Nos. 77, 80, 82, 93, 102, and 105).

| 75 | Real Buy Buy Store |
|---|---|
| 76 | Appeal Store |
| 78 | Hysen Store |
| 79 | RYRA Factory Direct Store |
| 81 | XiaoHE Kitchen Store |
| 83 | AliExpress Store |
| 84 | Lemaw Store |
| 85 | Boutique Home Furnishings. Store |
| 86 | Choice Specialty Store |
| 87 | Global Home Store |
| 88 | GlasswareBarware Stuff Store |
| 89 | Shop1104001944 Store |
| 90 | Rice Store |
| 91 | XiaoMjia Store |
| 92 | Wiener Home Life Store |
| 94 | Unoflo Home Store Store |
| 95 | YaHi Home Store |
| 96 | Shop1102856948 Store |
| 98 | Marke Store |
| 99 | Happiness Kitchenware Store |
| 100 | DailyHouse Store |
| 101 | MTOTM PRO Store |
| 103 | Samyoung Official Store |
| 104 | Shop1103810176 Store |
| 106 | Smile Life-Home Store |
| 107 | VERDIOS PRO Store |

## I.      Procedural Background

On November 20, 2024, Plaintiff filed a Verified Complaint against the defendants identified in Schedule A (Dkt. No. 1-2.)  Defendants are individuals, companies, and unincorporated associations that reside in both domestic and foreign jurisdictions.  (Dkt. 1 ¶ 3.)

The Complaint alleges infringement of United States Patent No. 11,744,256 B2 (the "'256 Patent")(Count I).

On November 20, 2024, Plaintiff filed a Motion for Temporary Restraining Order, Asset Restraining Order, Expedited Discovery, and Service of Process by Email (the "TRO"), which the Court granted on November 22, 2024 (Dkt. Nos. 5, 8, 10, 12, 19.).  On November 27, 2024, Plaintiff filed a Motion to Modify the TRO (Dkt. No. 29), and on December 4, 2024, Plaintiff filed a Motion for Extension of the TRO (Dkt. No. 21), which were granted on December 5, 2024. (Dkt. No. 28.)  On December 4, 2024, Plaintiff filed a Motion for Preliminary Injunction (Dkt. No. 24), which was granted on December 20, 2024 except as to Defendants 74-81 and 83-107. (Dkt. No. 40.)  On December 20 2024, the Court granted an extension of the TRO as to Defendants 74-81 and 83-107. (Dkt. No. 42.), and it further granted an extension of the TRO on December 31, 2024. (Dkt. No. 71.) On January 27, 2025 the Court granted the Motion for Preliminary Injunction as to Schedule A Defendants 74-81 and 83-107. (Dkt. No. 97.)

On March 13, 2025, Plaintiff filed a Request for Entry of Default as to the remaining Schedule A Defendants. (Dkt. No. 113.) On March 14, 2025, the Clerk of Court entered the default. (Dkt. No. 114.)

## II.      Factual Background

The following facts are alleged in the Complaint.[2] (Dkt. No. 1.)  Plaintiff is a Virginia limited liability company that maintains a principal place of business at 9113 Euclid Avenue, Manassas, VA 20110. (*Id*. ¶ 2.) Plaintiff is the manufacturer of the Foghat line of products,

---

[2] *See GlobalSantaFe Corp. v. Globalsantefe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim." (citing *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision)).

which allows "professional bartenders and home users alike to add flavor to cocktails and foods via sources of smoke." (*Id*. ¶ 14.) Plaintiff sells its Foghat-branded products in interstate and foreign commerce, including commerce in Virginia and the Eastern District of Virginia. (*Id*. ¶ 16.) Plaintiff maintains quality control standards for its Foghat-branded products. (*Id*. ¶ 16.) Genuine Foghat products are distributed through a network of licensees, distributors, and retailers, via reseller webstores, and through Plaintiff s own website, www.1000oaksbarrel.com. (*Id*.)

Thousand Oaks is the exclusive licensee of '256 Patent,[3] which was duly issued by the U.S. Patent and Trademark Office on September 5, 2023. (*Id*. ¶¶ 2, 18.) The '256 Patent claims patent-eligible subject matter and is valid and enforceable. (*Id*. ¶¶ 18, 19.) Of the '256 Patent's nineteen (19) claims, claims 1, 9, and 10 are independent claims directed to one of Thousand Oaks' Foghat-branded products - that is, "a device for imparting smoked flavors to beverages and foodstuffs." (*Id*. ¶ 20.) Thousand Oaks has marked its smoker device products with notices of the '256 Patent. (*Id*. ¶ 36.)

The Defaulting Defendants are all individuals, companies, and unincorporated business associations who, upon information and belief, primarily reside in foreign jurisdictions. (*Id*. ¶ 3.) The Defaulting Defendants sell Accused Products on Amazon.com, Temu.com, Walmart.com, Ebay.com, and AliExpress.com retail platforms. (*Id*.) Amazon.com and the other online retail platforms do not require sellers to publicly post their true names and contact information. (*Id*.) Accordingly, because sellers may use fictitious names and contact information, the true names, identities, and addresses of the Defaulting Defendants are currently unknown. (*Id*.)

---

[3] Soak Limited, London, Great Britain, is the exclusive owner of the '256 Patent by assignment. (Docket No. 1 ¶ 3.)

The Defaulting Defendants are not licensees of the '256 Patent, either expressly or implicitly, and they do not enjoy or benefit from any rights in or to the '256 Patent. (*Id.* ¶ 18.) The Defaulting Defendants nevertheless practice the claims of the ''256 Patent by manufacturing, importing, offering to sell, and selling "various smoker devices for imparting smoked flavors to cocktail beverages and food." (the "Accused Products"). (*Id.* ¶¶ 6, 21.)  Many of the Accused Products are manufactured by factories based in China and sold wholesale either directly or through China-based e-commerce Internet websites. For example, sellers on Amazon.com purchase Accused Products in bulk from the factory or the Chinese e-commerce sites to sell on Infringing Webstores. (*Id.* ¶ 17.)  The Defaulting Defendants target consumers in the United States, including the State of Virginia, and has offered to sell and, on information and belief, has sold and continues to sell Accused Products that practice the claims of the '256 Patent. For example, the Accused Products may be purchased by Virginia residents using the Amazon "Prime" online order system and delivered by an Amazon Prime delivery vehicle in this district. (*Id.* ¶ 4.)

Through their operation of the Infringing Webstores, the Defaulting Defendants are directly and personally engaging in the importation, offer for sale, and sale of Accused Products as alleged, oftentimes as partners and/or suppliers. (*Id.* ¶ 6.)  Defaulting Defendants intentionally or otherwise conceal their identities and the full scope of their infringing operations in an effort to deter Plaintiff from learning of the Defaulting Defendants' true identities and the exact interworking of their infringing acts.  (*Id*.) The Defaulting Defendants have flooded the online market with sales of Accused Products in violation of Plaintiff's intellectual property rights and have irreparably damaged, and are continuing to irreparably damage, Plaintiff. (*Id.* ¶ 14.) The Defaulting Defendants have infringed, and continue to infringe, at least claims 1 - 19 of the '256

Patent under 35 U.S.C. § 271(a) and/or (b), by (a) making, using, offering to sell, selling and/or importing the Accused Products into the United States. (*Id.* ¶ 30.)

## III.    Findings of Fact and Law

Federal Rule of Civil Procedure 55 provides that default judgment may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a)-(b). Although a defaulting defendant is deemed to have admitted the well-pleaded allegations of fact set forth in the complaint, *see* Fed. R. Civ. P. 8(b)(6), conclusions of law or "allegations regarding liability that are not 'well-pleaded'" are not deemed admitted. *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. Feb. 2, 2011) (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)); *see also JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (H.D. Va. 2014). Before entering default judgment this Court must determine whether the facts, as alleged in Plaintiff's Complaint, state a claim for relief. *JTH Tax, Inc.*, 8 F. Supp. 3d at 736 (*citing Anderson v. Found, for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision)).

### A.    Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction before it can enter default judgment against a defaulting party, and venue must be proper. *See, e.g., FDI Cap., LLC v. Petrogas Field Servs.*, 1:22CV1012 (LMB/JFA), 2023 WL 6192770, at *2 (E.D. Va. Feb. 17, 2023), *report and recommendation adopted*, 2023 WL 3069391 (E.D. Va. Mar. 15, 2023). In the present case, Thousand Oaks brought claims for infringement of the '256 Patent under 35 U.S.C. §§ 271(a)-(b). (Dkt. No. 1 ¶¶ 44-45.) This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 (federal question) and 1338(a) (civil action arising under any Act of Congress relating to patents and trademarks.)

7

This court has personal jurisdiction over U.S.-based Defaulting Defendants in that they transact business in the State of Virginia and in the Eastern District of Virginia and over the non-U.S. based Defaulting Defendants[4] because have supplied their products into this district and under the Federal Long Arm Rule, FRCP 4(k)(2). (Dkt. No. 1 ¶¶ 9-10.)

Courts can exercise personal jurisdiction over a defendant only if "(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause." *Thousand Oaks Barrel Co. v. Deep South Barrels LLC, et al.*, 241 F.Supp.3d 708, 714 (E.D.Va. 2017) (quoting *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F. 3d 390, 396 (4th Cir. 2003)). The long-arm statute must reach the defendant's conduct, and that reach must not exceed the statute's constitutional grasp. *Id.* (quoting *Rannoch, Inc. v. Rannoch Corp.*, 52 F. Supp. 2d 681, 684 (E.D. Va. 1999)).

Virginia's long-arm statute provides for the exercise of personal jurisdiction where a defendant "transact[s] any business in Virginia. Va. Code § 8.01-328.1(A). When personal jurisdiction "is based solely upon [the long-arm statute], only a cause of action arising from acts enumerated in [the statute] may be asserted" against the defendant. *Id*. § 8.01-328.1(C). The Fourth Circuit has explained that Virginia's long-arm statute "extends the jurisdiction of its courts as far as federal due process permits." *Thousand Oaks Barrel Co.*, 241 F.Supp.3d at 714 (citing *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002)). Accordingly, the "statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Id*. (internal quotation marks omitted); *see also Consulting Eng'rs*

---

[4] Defaulting Defendant No. 10 is a resident of the state of Maryland and Defaulting Defendant No. 19 is a resident of New York. The remaining Defaulting Defendants are all non-U.S. based.

*Corp. v. Geometric Ltd.*, 561 F.3d 273, 276-77 (4th Cir. 2009). Under that inquiry, courts consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 352 (4th Cir. 2020) (*quoting Consulting Eng'rs Corp.*, 561 F.3d at 278).

In *ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002), the Fourth Circuit established a test for determining whether specific jurisdiction exists over a nonresident defendant based on the defendant's Internet contacts with the forum. *Thousand Oaks Barrel Co.*, 241 F.Supp.3d at 715. There, the Fourth Circuit adopted the "sliding scale" model established in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, which looks to the nature and quality of defendant's Internet activity to determine whether personal jurisdiction exists. *Id*. At one end of the scale or continuum "are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Id*. (quoting *Zippo*, 952 F.Supp. at 1124). At the other end of the scale or continuum are passive websites that simply put information on the Internet that forum users can access, and thus are typically not a basis for exercising personal jurisdiction. *Id*. The Fourth Circuit has adopted and adapted that sliding scale approach, and as a result a state can exercise personal jurisdiction over a nonresident defendant when the defendant "(1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id*. at 716.

This court has personal jurisdiction over the Defaulting Defendants because they have directed their business over the Internet and supplied their products into this district using the infringing Webstores with the intent to do business with Virginia residents.  The Defaulting Defendants provide the Accused Products to the residents of Virginia and this District, and through fully interactive websites allow Accused Products to be purchased by Virginia residents and shipped to addresses in Virginia. The infringing Webstores used by the Defaulting Defendants are located on Amazon.com, Temu.com, Walmart.com, Ebay.com and AliExpress.com online sales platforms. (Dkt. 1, ¶¶ 14, 21, 38.)

Plaintiff contends that venue is proper in this Court against the Defaulting Defendants under 28 U.S.C. § 1391 (b)-(c) and 28 U.S.C. § 1400(b) since the Defaulting Defendants are entities or individuals subject to personal jurisdiction in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.  This Court is a proper venue for a case against non-U.S. based Defaulting Defendants since venue would be proper in any judicial district in any state to which foreign Default Defendants are subject to personal jurisdiction. *See Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706, 92 S. Ct. 1936, 32 L. Ed. 2d 428 (1972).

## B.    Thousand Oaks Properly Served the Defaulting Defendants

In its Motion for TRO, Plaintiff asked for service of process by Email upon the Schedule A Defendants. (Dkt. Nos. 12-13.)  This Court is empowered to authorize service via electronic mail.  Fed. R. Civ. P. 4(f) governs service of process upon individuals in foreign countries and provides three mechanisms of service:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or

10

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: […] or

(3) by other means not prohibited by international agreement, as the court orders.

Importantly, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014–1015 (9th Cir. 2002). As the *Rio Props*. Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id*. at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. See *Id*.; *see also BP Prods. N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. May 31, 2006) (holding service of process by publication in Pakistani newspapers was appropriate and stating that "[t]he Court is afforded wide discretion in ordering service of process under Rule 4(f)(3)"); *In re Int'l Telemedia Assocs., Inc*., 245 B.R. 713 (Bankr. N.D. Ga. 2000) (authorizing service by facsimile, e-mail, and mail to the defendant's last known address); *Smith v. Islamic Emirate of Afghanistan*, 2001 WL 1658211 (S.D.N.Y. 2001) (authorizing service by alternative methods under Fed. R.Civ. P. 4(f)(3)). Notably, many courts have held that "nothing in Rule 4(f) or its advisory committee notes indicates that court-directed service under Rule 4(f)(3) is 'extraordinary relief.'" *Forum Fin. Grp., LLC v. President & Fellows of Harvard Coll*., 199 F.R.D. 22, 23 (D. Me. 2001).

Thousand Oaks filed proposed summonses on January 22, 2025 for defendants remaining in the case, which were issued by the Clerk of the Court on January 23, 2025. (Dkt. Nos. 87, 89.) Thousand Oaks then emailed the summonses and the Verified Complaint to the remaining defendants on March 13, 2025 and returned the executed summonses to the Clerk of the Court on

11

the same day. (Dkt. No. 112.)  As detailed in the Declaration of Kendal Sheets and proof of

service in Thousand Oaks' Request for Default (Dkt. No. 113), all Defaulting Defendants were

properly served the Complaint and Summonses.

### C.      Joinder of Defaulting Defendants

Under Fed. R. Civ. P. 20(a)(2), the Defaulting Defendants may be joined in one action if

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect

to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action. Plaintiff

contends here that under Rule 20, joinder of the Defaulting Defendants in a single action is

proper because the facts established by the Complaint raise common questions concerning the

infringement of Thousand Oaks' rights in the '256 Patent.  Further, the Defaulting Defendants

may be joined under Rule 21 because "none of the defaulting defendant[s] . . . are prejudiced by

joinder, as their liability is established by their own Defaulting."  *LendingClub Bank v.

LendingClub.com*, No. 122CV484AJTJFA, 2023 WL 2581308, at *4 (E.D. Va. Mar. 20, 2023).

### D.      Grounds for Default Judgment

"Where a defendant fails to plead or otherwise defend itself, default judgment is

warranted." *Toolchex, Inc. v. Trainor*, 2009 WL 2244486, at *1 (E.D. Va. July 24, 2009)

(granting default judgment and entering permanent injunction in trademark infringement claim)

(citation omitted); *see also Thousand Oaks Barrel Co. v. Freedom Oak Barrels, et al.,* 2022 WL

4378689 (E.D. Va. 2022) (LMB/WEF) (entering default judgment and awarding attorney's fees

in trademark and copyright infringement claims); *EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d

497 (E.D. Va. 2009) (entering default judgment and awarding attorney's fees in copyright

infringement claim); *Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505 (E.D. Va.

2003) (entering default judgment in trademark and copyright infringement claim). This Court

"must have both subject matter and personal jurisdiction over a defaulting party before it can

render default judgment." *Unum Life Ins. Co. of Am. v. James*, 2015 WL 6439051, at *1 (E.D.

Va. Oct. 21, 2015). "Where a defendant is in default, as here, the facts set forth in the plaintiff's

complaint are deemed admitted if the plaintiff's complaint sets forth a proper claim." *EMI Apr.

Music*, 618 F. Supp. 2d at 505. However, "[b]efore entering default judgment, … the Court must

evaluate the plaintiff's complaint to ensure that the complaint properly states a claim." *Unum Life

Ins. Co.*, 2015 WL 6439051, at *3.

Under Fed. R. Civ. P. 55(a), "[w]hen a party against whom a judgment for affirmative

relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

otherwise, the clerk must enter the party's default." The Defaulting Defendants were served the

complaint on January 30, 2025.  Answers were due by the Defaulting Defendants on February

20, 2025.  To date, none of the Defaulting Defendants filed an Answer or entered an appearance

in Court.  The Clerk of the Court properly made an Entry of Default for the Defaulting

Defendants on March 14, 2025. (Dkt. No. 114.)  Thus, the Defaulting Defendants were, and

remain still, in default.

### E.    Liability

The Defaulting Defendants admit to the allegations of facts in the Verified Complaint.

(Dkt. No. 1.)  *Atl. Coast Pipeline, LLC v. 1.52 Acres, More or Less, in Nottoway Cnty., Virginia*,

No. 3:17CV814, 2025 WL 864279, at *3 (E.D. Va. Mar. 19, 2025); s*ee* Fed. R. Civ. P. 8(b)(6)

("An allegation — other than one relating to the amount of damages — is admitted if a

responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp.

v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts

13

alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. . . .")

"[B]efore entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint states a claim upon which relief can be granted. *Morton v. Cisneros*, No. 1:23-CV-01726-PTG-LRV, 2025 WL 504481, at *4 (E.D. Va. Jan. 8, 2025.) To meet this standard, the complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).)

Thousand Oaks properly pled that the Defaulting Defendants have infringed, and continue to directly infringe, at least claims 1-19 of the '256 Patent under 35 U.S.C. § 271(a), by making, using, offering to sell, selling and importing the Accused Products in the United States. (Dkt. No. 1 ¶¶ 22, 30, 32-33, 44.)  The Defaulting Defendants have indirectly infringed one or more of the claims of the '256 Patent under 35 USC §271(b) by providing Accused Products, with instructions, which are used to impart smoky flavors to beverages and foodstuffs, thereby inducing others to use the Accused Products in an infringing manner. (*Id.* ¶ 45.)  As a result of the Defaulting Defendants' infringement of the '256 Patent, Plaintiff has suffered and will continue to suffer damages in an amount not yet determined, of at least a reasonable royalty. (*Id.* ¶ 46.) The Defaulting Defendants will continue to register or acquire listings for the purpose of selling Accused Products that infringe upon the '256 Patent unless preliminarily and permanently

enjoined. (*Id.* ¶ 47.)  The Defaulting Defendants have infringed the '256 Patent through the aforesaid acts and will continue to do so unless enjoined by this Court. The Defaulting Defendants' wrongful conduct have caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. (*Id.* ¶ 48.)

The Complaint identifies Thousand Oaks as the exclusive licensee of the '256 Patent with the right to enforce (*Id.* ¶ 2);  names the Defaulting Defendants as defendants (*Id*. ¶ 3, Schedule A); alleges that the Defaulting Defendants directly infringe the '256 Patent (*Id*. ¶ 44); contains a description, in general terms, of the means by which the patent was infringed (*Id*. ¶¶ 21- 39; Exhibit B (initial claim charts)); identifies the specific parts of patent law that are implicated (*Id*. ¶¶ 32-34). Schedule A of the Amended Complaint also identifies the specific accused products sold by the Defaulting Defendants. (*Id*. Sch. A.)

**F.      Requested Relief**

Thousand Oaks has been damaged and is entitled to monetary damages from the Defaulting Defendants under the Patent Act as well as a permanent injunction pursuant to 35 U.S.C. § 283. Since Thousand Oaks is the original manufacturer of a cocktail smoker made under the '256 Patent and is still selling the item, it seeks lost profits against the Defaulting Defendants.  Additionally, at a minimum Thousand Oaks seeks a reasonable royalty which has been calculated using a reasonably royalty rate of $5.00 per unit, determined by Thousand Oaks CEO Bryan Weisberg. Plaintiff also seeks its reasonable attorneys' fees and costs.

1.      *Equitable Relief of a Permanent Injunction Remains Appropriate*

The Patent Act provides courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*See Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (*citing eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

Further, this Court has previously entered injunctions that have restrained individuals and entities from partaking in certain activities that facilitate a defendant's unlawful actions. *See, e.g. Thousand Oaks Barrel Co. v. Freedom Oak Barrels et al,* Case No. 1:21-cv-848 [ECF 47] (E.D. Va. Jul. 21, 2021); *Thousand Oaks Barrel Co. LLC v. The Partnerships, etc.,* Case No. 1:23-cv-1560 (E.D. Va. Nov. 11, 2023)*, Thousand Oaks Barrel Co. LLC v. The Partnerships, etc.,* Case No. 1:23-cv-1563 (E.D. Va. Nov. 11, 2023),  and *Thousand Oaks Barrel Co. LLC v. The Unincorporated Associations, etc.,* Case No. 1:24-cv-958 (E.D. Va. Nov. 20, 2024); *Montblanc-Simplo GMBH v. Ilnitsky*, 1:17-cv-415 (LMB/TCB), 2018 WL 844401, at *2 (E.D. Va. Feb. 13, 2018); *Microsoft Corp. v. Does 1-2*, No. 1:16-cv-00993 (GBL/TCB), 2017 WL 3605317, at *1-2 (E.D. Va. Aug. 22, 2017.)

This Court granted Thousand Oaks's Motion for TRO (Dkt. No. 19), and it granted each of Thousand Oaks' two Motions for Preliminary Injunction (Dkt. Nos. 50, 97).  In granting these injunctions, this Court found that (1) Plaintiff is likely to succeed on the merits, (2) it is likely to

16

suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in Plaintiff's favor, and (4) that the injunction is in the public interest.

Here, a permanent injunction against the Defaulting Defendants is warranted since all four elements of the Fourth Circuit's test for a permanent injunction are satisfied. First, Thousand Oaks suffered and continues to suffer irreparable injury as the Defaulting Defendants have and continue to infringe Thousand Oaks' exclusive patent rights in the '256 Patent. Second, other remedies at law are inadequate to compensate Thousand Oaks. Despite repeated attempts to communicate with the Defaulting Defendants to  participate in this lawsuit, they have failed to respond. The lack of an appropriate response shows a threat of continued infringement as well as a likely lack of cooperation by defendants with any remedy short of a permanent injunction. Third, the only hardship that would befall the Defaulting Defendants by granting Thousand Oaks' permanent injunction would be the requirement to follow clearly established U.S. patent law. Therefore, the balance of hardships weighs in Thousand Oaks' favor, as the Defaulting Defendants would face barely any hardship at all.   Fourth, public interest favors an injunction. An injunction would prevent the public from purchasing an unlicensed, knock-off cocktail smoker product that are unregulated by Thousand Oaks, with possible dubious manufacturing aspects leading to dangerous use conditions, from being sold by the Defaulting Defendants.  (*See* Weisberg Decl. ¶ 11.) An injunction would also maintain the integrity of Thousand Oaks' exclusive patent rights that protect its commercial embodiment of the Foghat Cocktail Smoker.

Based on the foregoing, Thousand Oaks requests the Court grant its request for a permanent injunction against the Defaulting Defendants to stop their infringing and illegal

importing, promoting, advertising, marketing, retailing, offering for sale, distributing, and selling activities performed based on these actions.

### 2.    *Damages*

If a court determines that the well-pleaded allegations in the complaint support relief in the form of damages, the court must establish the damages to which the plaintiff is entitled. *L&W Supply Corp. v. Driven Constr., Inc.*, No. 2:22-CV-437, 2023 WL 2916563, at *3 (E.D. Va. Apr. 12, 2023); *see J & J Sports Prods., Inc. v. Brutt's LLC*, No. 2:14CV269, 2014 WL 7363823, at *7 (E.D. Va. Dec. 23, 2014). Allegations relating to the amount of damages are not deemed admitted by default. Fed. R. Civ. P. 8(b)(6). Unless the amount of damages is certain, the Court is required to make an independent determination of the sum to be awarded. In all circumstances, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c); *see also In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Thus, even if the court determines that a plaintiff has established liability, the court does not accept as true factual allegations regarding damages, but rather must make an independent determination regarding damages. *J & J Sports Productions, Inc., v. Panana, LLC*, 2014 WL 5454323, at *1 (D. Md. Oct. 24, 2014). In determining the appropriate sum, the court may rely on affidavits or documentary evidence in the record. *Id*.

Exhibit A contains the Declaration of Bryan Weisberg, CEO of Thousand Oaks. Mr. Weisberg has overseen the licensing of Thousand Oaks' patent rights for the design patent U.S. Patent No. D944,594 (the "'D594 Patent") titled "Smoker Device," in the prior Schedule A case *TOB LLC v. The Partnerships, etc.*, Case No. 1:23-cv-3378 (D. Ill. May 30, 2023). Approximately 80 licenses were acquired from defendants in that case.  Mr. Weisberg also oversaw the licensing of Thousand Oaks' patent rights in the cases *Thousand Oaks Barrel Co.*

*LLC v. The Partnerships, etc.*, Case No. 1:23-cv-1560 (E.D. Va. Nov. 11, 2023), *Thousand Oaks Barrel Co. LLC v. The Partnerships, etc.*, Case No. 1:23-cv-1563 (E.D. Va. Nov. 11, 2023),  and *Thousand Oaks Barrel Co. LLC v. The Unincorporated Associations, etc.*, Case No. 1:24-cv-958 (E.D. Va. Nov. 20, 2024.)

### a. Lost Profits

"The measure of damages is an amount which will compensate the patent owner for the pecuniary loss sustained because of the infringement." *State Industries, Inc. v. Mor–Flo Industries, Inc., 883 F.2d 1573, 1577* (Fed.Cir. 1989). In order for the patent owner to obtain lost profits as actual damages, there must be a demonstration that there was a reasonable probability that, but for the infringement, it would have made the infringer's sales. *Id.* One way for a patentee to prove its entitlement to lost profits is to show: "(1) demand for the patented product, (2)[the] absence of noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made." *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 859 (E.D. Va. 1998); *Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed.Cir. 1995) (en banc) (citing banc) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978)); *State Industries*, 883 F.2d at 1577. Evidence of these four elements permits a court to infer that the plaintiff's lost profits were caused by the defendant's infringing sales. *See Rite–Hite*, 56 F.3d at 1545.

Regarding (1), demand for the product, Mr. Weisberg declared that there was, and always has been since launched, a great demand for the Foghat Cocktail Smoker. (Exh. A, Weisberg Decl. ¶ 10.) When Thousand Oaks launched the product in 2019 on Amazon.com, it was quickly named as one of the top ten fastest growing products in all of Amazon. (*Id.*)  It has sold millions of units since its launch. *Id*. The infringers number in the thousands, many of whom have either

been licensed by Thousand Oaks or put out of business due to court injunctions. (*Id*.)  Thousand Oaks still sells the Foghat smoker through Amazon.com and wholesale to numerous online ecommerce retailers. (*Id*.) Regarding (2) the absence of noninfringing substitutes, there are no acceptable non-infringing alternatives to the Foghat cocktail smoker. (*Id*. ¶ 11.)  Any cocktail smoker intended to sit on a glass with an extension into the interior of the drinking glass would infringe the '256 Patent. (*Id*.) Other cocktail smoker devices that sit on top of a glass that do not extend into the glass and that are for sale on Amazon.com and other platforms are dangerous and a fire hazard. (*Id*.) The other devices can easily be slid off or knocked off of a glass, and if that occurred while the fuel is on fire, would create a dangerous fire hazard. (*Id*.) None of those devices have the safety features designed into the Foghat such as, instead of having a flat bottom sitting on a glass rim, the lower conduit of the Thousand Oaks smoker extends down into the glass. (*Id*.) This reduces a fire hazard by having the center chamber that holds the wood chip fuel recessed into the glass so that if the smoker is bumped or moved, the extended chamber would stop against the inside of the glass. (*Id*.) This was an important safety feature since the other types of cocktail smokers can flame up out of the smoker and spit wood chips and embers out of the device, obviously creating a fire hazard. (*Id*.) These type of smoker devices are especially dangerous when used at a cocktail bar where there are high-proof (i.e. flammable) alcohol bottles sitting nearby on the bar. (*Id*.) Any buyer that wants the features of the Thousand Oaks cocktail smoker would not purchase the flat-bottomed cocktail smoker. (*Id*.)

Regarding (3) his manufacturing and marketing capability to exploit the demand, Thousand Oaks has always marketed and manufactured its own Foghat cocktail smokers and has the capacity to manufacture in its own facilities any volume of order it has received. (*Id*. at ¶ 12.) Regarding (4) the amount of the profit he would have made, Thousand Oaks sells its Foghat

Cocktail Smoker for $39.99 on Amazon.com.  Its profit selling on Amazon is 50 points, meaning 50 percent. Thus, its profit for each Foghat Cocktail Smoker sale is 19.99, which is a 50% profit margin. (*Id*. at ¶ 13.)

Paragraphs 15 and 17 of the Weisberg declaration lists the calculated lost profits from the Defaulting Defendants.[5]

**b.       Reasonable Royalties**

Under 35 U.S.C. § 284, when infringement is established by a plaintiff, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." Utility patent holders may be liable for lost profits or a reasonable royalty. *See Trell v. Marlee Elecs. Corp*., 912 F.2d 1443, 1445 (Fed. Cir. 1990).

Thousand Oaks began marking its Foghat Cocktail Smoker products being sold under its exclusive patent rights for the '256 Patent on September 6, 2023, which is the day after patent was granted on September 5, 2023. (Weisberg Decl., ¶ 4.) In the current case, and in the related cases *Thousand Oaks Barrel Co. LLC v. The Partnerships, Etc*., Case No. 1:23-cv-1563 (E.D. Va. Nov. 11, 2023), *Thousand Oaks Barrel Co. LLC v. The Partnerships, Etc*., Case No. 1:23-cv-1560 (E.D. Va. Nov. 11, 2023), and *Thousand Oaks Barrel Co. LLC v. The Unincorporated Associations, etc*., Case No. 1:24-cv-958 (E.D. Va. Nov. 20, 2024) Thousand Oaks has granted over 250 licenses to the '256 Patent to named defendants. (*Id*. ¶ 4.)  Most of these licenses were granted using a five dollar per unit royalty rate. (*Id*. ¶ 6.)  Based upon Weisberg's expert knowledge of the industry, from negotiating licenses for the previous cases, and from negotiating

---

[5] Amazon.com, Temu.com, Ebay.com, Walmart.com, and Aliexpress.com provided sales data to attorney Kendal Sheets, counsel for Plaintiff, in response to early discovery requests. See Exh. B, Sheets Declaration ¶ ¶ 5-6.

licenses in the current case, a reasonable royalty for the Defaulting Defendants should be five dollars per infringing unit. (*Id*. ¶ 7.)  Paragraphs 14 and 16 of the Weisberg Declaration calculates reasonable royalty damages from the Defaulting Defendants.

### 3.   Attorneys' Fees and Costs

#### a.   *Attorneys' Fees*

The Defaulting Defendants' actions were willful, and Thousand Oaks is entitled to its attorneys' fees. The Defaulting Defendants' failure to appear and defend this case permits an inference of willfulness. *See Moreland v. Pal of Mine Corp*., No. 2:23-cv-211, 2024 WL 3937267, at *8 (E.D. Va. Aug. 26, 2024) (applying *Octane Fitness* in a trademark infringement case and granting plaintiffs' request for attorneys' fees in their motion for default judgment); *see also Georgia-Pacific Consumer Prods. LP v. von Drehle Corp*., 781 F.3d 710, 721 (4th Cir. 2015) (adopting the *Octane Fitness* standard in a Lanham Act case). The Defaulting Defendants' "disregard for this litigation creates an exceptional case that 'stands out from others' and justifies an award of reasonable attorneys' fees." *Id*.

Courts have also awarded attorneys' fees based on defendant's deemed admission of allegations of willfulness. *See Unilever Supply Chain, Inc. v. I & I Wholesale Food, Inc*., 10-cv-1077, 2011 U.S. Dist. LEXIS 30661, at *6-7, *19 (E.D.N.Y. Feb. 17, 2011), *citing Louis Vuitton Malletier v. WhenU.com, Inc*., 2007 WL 25717, at *4 (S.D.N.Y. Jan. 26, 2007) (admission by default supports an attorneys' fee award); *Protection One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC*, 353 F. Supp. 2d 201, 207-08 (E.D.N.Y. 2008) (default admits willfulness and makes the case exceptional.)

Thousand Oaks requests the Court hold that the actions of the Defaulting Defendants are exceptional under 35 U.S.C. § 285 and award Thousand Oaks' attorneys' fees.

b)      *Costs*

Thousand Oaks requests that the Court hold the actions of the Defaulting Defendants are exceptional and award Thousand Oaks' costs for bringing this suit. The Patent Act provides that "[u]pon finding for the claimant the court shall award the claimant damages . . . together with . . . costs as fixed by the court."  35 U.S.C. § 284.

## CONCLUSION

Based on the foregoing, Thousand Oaks respectfully requests the Court grant Thousand Oaks' Motion for Default Judgment and the relief requested.

Date: April 9, 2025                               Respectfully submitted,

                                                  __/s/__Kendal M. Sheets
                                                  Kendal Sheets (VSB No. 44537)
                                                  ksheets@dnlzito.com
                                                  Tel: 703-489-8937
                                                  Joseph J. Zito (*pro hac vice*)
                                                  jzito@dnlzito.com
                                                  Tel. (202) 466-3500
                                                  DNL ZITO CASTELLANO PLLC
                                                  1250 Connecticut Avenue, NW
                                                  Suite 700
                                                  Washington, DC 20036
                                                  Fax: (703) 997-7534

                                                  *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2025, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will serve all counsel of record in this case.


                        __/s/__ Kendal M. Sheets

                        By:  Ken Sheets

                        Virginia bar number 44537