## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

THOUSAND OAKS BARREL CO. LLC,   )
)
          Plaintiff,              )
)
         v.                 )      Case No. 1:24-cv-02080-AJT-LRV
)
THE UNINCORPORATED          )
ASSOCIATIONS IDENTIFIED IN    )
SCHEDULE A,               )
)
          Defendants.         )
)
_____  )

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Thousand Oaks Barrel Co., LLC's ("Plaintiff") Motion for Default Judgment, (Dkt. No. 116) (the "Motion"), wherein Plaintiff seeks entry of a default judgment against certain Defendants identified in the Motion.  Plaintiff's Complaint identified 107 Defendants, (*see* Dkt. No. 1-1), and Plaintiff has since filed notices of voluntary dismissal with respect to most Defendants, which the Court granted. (*See* Dkt. Nos. 33, 37, 38, 39, 83, 96, 101, 104, 105, 107, 120.)  Thus, this Report and Recommendation applies to the remaining fifty-one (51) Defendants (collectively the "Defaulting Defendants").[1]

The undersigned magistrate judge files this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). A copy will be provided to all interested parties. For the reasons articulated below, the undersigned recommends that Plaintiff's Motion for Default Judgment (Dkt. No. 116) be **GRANTED**.

---

[1] As of the date of this Report and Recommendation, the Defaulting Defendants are Defendant Nos. 3, 7, 9, 10, 12, 14, 19, 22, 23, 24, 25, 32, 35, 37, 38, 45, 46, 47, 48, 50, 57, 59, 63, 70, 74, 75, 76, 78, 79, 81, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 94, 95, 96, 98, 99, 100, 101, 103, 104, 106, and 107.

1

## I.    PROCEDURAL BACKGROUND

On November 20, 2024, Plaintiff filed a Verified Complaint against the defendants identified in Schedule A thereto for infringement of one or more claims of U.S. Patent No. 11,744,256 B2 (the "'256 Patent"), titled "Device and method for Imparting Smoked Flavors to Beverages and Foodstuffs." (Dkt. No. 1 ¶¶ 1, 43–48.) Defendants are individuals, companies, and unincorporated business associations that reside in both domestic and foreign jurisdictions. (*Id.* ¶ 3.) On November 20, 2024, Plaintiff filed a Motion for Entry of a Temporary Restraining Order, Asset Restraining Order, Expedited Discovery Order, and Service of Process by Email. (Dkt. No. 5.) On November 22, 2024, the Court granted Plaintiff's motion for a temporary restraining order. (Dkt. No. 19.)  On December 4, 2024, Plaintiff filed a Motion for Extension of Temporary Restraining Order, (Dkt. No. 21,) a Motion for Preliminary Injunction, (Dkt. No. 42), and a Motion to Reschedule the Preliminary Injunction Hearing, (Dkt. No. 27).  The Court granted those motions on December 5, 2024, extended the Temporary Restraining Order from November 22, 2024 to December 20, 2024, and set the hearing on Plaintiff's Motion for Preliminary Injunction for December 20, 2024. (Dkt. No. 28.) On December 20, 2024, Plaintiff moved for a second extension of the Temporary Restraining Order and to continue the preliminary injunction hearing. (Dkt. No. 41.) The Court granted a second extension and reset the preliminary injunction hearing for January 2025. (Dkt. No. 71.) On January 27, 2025, the Court granted Plaintiff's Motion for a Preliminary Injunction, finding, among other things, that Plaintiff "established that it is likely to succeed on its utility patent infringement claim." (Dkt. No. 97 at 1.)

As discussed above, over the course of this litigation, Plaintiff has filed notices of voluntary dismissal against certain Defendants; the Court has since dismissed those Defendants.  On March

13, 2025, Plaintiff filed a Request for Entry of Default against the then-remaining Defendants.[2] (Dkt. No. 113.) The Clerk of Court entered the default on March 14, 2025. (Dkt. No. 114.) On April 9, 2025, Plaintiff filed a Motion for Default Judgment. (Dkt. No. 116.) That same day, Plaintiff served the Defaulting Defendants with copies of the Motion for Default Judgment, Memorandum in Support, and Notice of Hearing Date. (*See* Dkt. No. 119.) On May 2, 2025, the undersigned held a hearing on Plaintiff's Motion for Default Judgment. (Dkt. No. 122.) Counsel for Plaintiff appeared at the hearing; no person appeared on behalf of any of the Defaulting Defendants. (*Id.*) At the conclusion of the hearing, the undersigned took the Motion under advisement and requested supplemental briefing from Plaintiff. (Dkt. No. 123.) On May 22, 2025, Plaintiff filed that requested briefing. (Dkt. No. 124.)

## II.    FACTUAL BACKGROUND

The following facts are established in the Verified Complaint.[3] Plaintiff is a Virginia limited liability company that maintains a principal place of business at 9113 Euclid Avenue, Manassas, VA 20110. (Dkt. No. 1 ¶ 2.) Plaintiff is the manufacturer of the FOGHAT product lines, including the Foghat Cocktail Smoker, which allows "professional bartenders and home users alike to add flavor to cocktails and foods via sources of smoke." (*Id.* ¶¶ 2, 14.) Genuine Foghat products are distributed through a network of Plaintiff's licensees, distributors, and retailers via reseller webstores and through Plaintiff's own webstore, www.1000oaksbarrel.com. (*Id.* ¶ 16) Plaintiff is the exclusive licensee of the '256 Patent[4] and Plaintiff's Foghat products are

---

[2] Specifically, Plaintiff requested an entry of default against Defendant Nos. 8, 15, 29, 32, 36, 38, 39, 44, 47, 48, 52, 53, 55, 58, 59, 66, 75, 77, 79, 81, 83, 89, 96, 97, and 98.

[3] *See GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim." (citing *Anderson v. Found. for Advancement, Educ. & Emp. of Am. Indians*, 187 F.3d 628 (4th Cir. 1999) (unpublished table decision))).

[4] Soak Limited, London, Great Britain, is the exclusive owner of the '256 Patent by assignment. (Dkt. No. 15 ¶ 18.)

3

commercial embodiments made under the '256 Patent. (*Id.* ¶ 14.) The '256 Patent was duly and legally issued by the U.S. Patent and Trademark Office ("USPTO") on September 5, 2023. (*Id.* ¶ 18.) Since then, Plaintiff has marked its Foghat products with notices of the '256 Patent. (*Id.* ¶ 36.) Plaintiff maintains quality control standards for all its products sold under the Foghat brand. (*Id.* ¶ 16.)

Defendants are individuals, companies, and unincorporated business associations that reside in both domestic and foreign jurisdictions. (*Id.* ¶ 3.) Defendants are not licensees of the '256 Patent, either expressly or implicitly, and they do not enjoy or benefit from any rights in or to the '256 Patent. (*Id.* ¶ 18.) They nevertheless offer and sell various smoker devices that allegedly practice the claims of the '256 Patent (the "Accused Products") through Amazon.com, Temu.com, Walmart.com, Ebay.com, and AliExpress.com (the "Infringing Webstores"). (*Id.* ¶¶ 4, 21.) Because the Infringing Webstores do not require sellers, including Defendants, to publicly post their true names and contact information, the true names, identities, and addresses of Defendants are unknown. (*Id.* ¶ 3.)

Many of the Accused Products are manufactured by factories in China and sold wholesale either directly or through China-based e-commerce websites. (*Id.* ¶ 17.) For example, Defendants selling on Amazon.com purchase Accused Products in bulk from Chinese factories or e-commerce websites to sell on the Infringing Webstores. (*Id.*) Defendants sell the Accused Products to consumers within the United States, including to consumers in the Commonwealth of Virginia and the Eastern District of Virginia. (*Id.* ¶¶ 4, 13.) "For example, the Accused Products may be purchased by Virginia residents using the Amazon 'Prime' online order system and delivered by an Amazon Prime delivery vehicle in this district." (*Id.* ¶ 4.)

## III.    DISCUSSION

### A.  Jurisdiction and Venue

Before a court can render a default judgment, it must determine that: (i) it has subject matter jurisdiction over the claims; (ii) it has personal jurisdiction over the defaulting parties, and (iii) venue is proper.

First, the Court has subject matter jurisdiction over this action.  Plaintiff brings claims for infringement of the '256 Patent under 35 U.S.C. §§ 271(a)–(b).  (Dkt. No. 1 ¶¶ 43–48.)  The undersigned thus finds that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (civil action arising under any Act of Congress relating to patents and trademarks).  (*Id.* ¶¶ 7, 8.)

Second, the Court may exercise personal jurisdiction over the Defaulting Defendants because they conducted business within this District and have sufficient "minimum contacts" with Virginia.  (*Id.* ¶¶ 10, 13.)  To exercise personal jurisdiction over a matter, both the Virginia long-arm statute and federal due process standards must be satisfied.  *See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012).  Here, the Defaulting Defendants: (i) accept payment in U.S. dollars and funds from U.S. bank accounts; (ii) operate Infringing Webstores through which residents of this District can purchase Accused Products; (iii) ship the Accused Products to this District's residents; and (iv) have sold and are continuing to sell Accused Products to residents of Virginia.  (Dkt. No. 1 ¶¶ 10, 13, 38); *see also Ontel Prods. Corp. v. Unincorporated Associations Identified in Schedule A*, No. 1:21-cv-1452, 2022 WL 9874815, at *6 (E.D. Va. Aug. 12, 2022), *report and recommendation adopted*, No. 1:21-cv-1452, 2022 WL 4368157 (E.D. Va. Sept. 21, 2022) (finding personal jurisdiction where defendants "used internet stores through which residents of this district could purchase products that could then be

5

shipped to this district, and, in fact, defendants actually shipped counterfeit HUGGLE products to this district.").

Third, venue is proper because the Defaulting Defendants are subject to personal jurisdiction in this District and a substantial part of the events giving rise to Plaintiff's claims—the selling of counterfeit goods—occurred in this District.  (Dkt. No. 1 ¶¶ 11–12); *see also* 28 U.S.C. §§ 1391(b)–(c); 28 U.S.C. § 1400.

For the reasons stated above, the undersigned finds that this Court has subject matter jurisdiction over this action, personal jurisdiction over the Defaulting Defendants, and that venue is proper.

## B. Service of Process

Federal Rule of Civil Procedure 4(f) authorizes service on an individual in a foreign country by three means:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give Notice . . . or (3) by other means not prohibited by international agreement, as the court orders.

FED. R. CIV. P. 4(f)(1)–(3).  Rule 4(h)(2) authorizes service of process on foreign corporations "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)."  FED. R. CIV. P. 4(h)(2).  Rule 4(f) "does not denote any hierarchy or preference of one method of service over another."  *BP Prods. N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 264 (E.D. Va. 2005) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)).  To fulfill the due process requirements under Rule 4(f)(3), a court must approve a method of service that is "reasonably calculated to give notice to defendant."  *Id.*

6

On November 22, 2024, the Court permitted Plaintiff to "serve the Verified Complaint upon Defendants using the email addresses determined from said limited discovery." (Dkt. No. 19 at 2.) Plaintiff filed Proposed Summonses on January 22, 2025, (Dkt. No. 87), and the Clerk of Court issued the Summonses on January 23, 2025 (Dkt. No. 89). On March 13, 2025, Plaintiff filed executed summons for certain Defendants.[5] (Dkt. No. 112.) Counsel for Plaintiff filed a declaration affirming that the Defaulting Defendants were served by email with the Summons and Verified Complaint. (Dkt. No. 113-1 ¶ 3.) Based on the foregoing, the undersigned finds that service of process has been accomplished in this action.

### C. Joinder of the Defaulting Defendants

Under Federal Rule of Civil Procedure 20(a)(2), multiple defendants may be joined in one action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2)(A)–(B). Additionally, under Rule 21, the Court may, on motion or "on its own . . . on just terms, add or drop a party," including when doing so would not affect the joined parties' substantive rights and would not otherwise cause prejudice to those parties. FED. R. CIV. P. 21; *see also Coach, Inc. v. 1941 Coachoutletstore.com*, 2012 WL 27918, at *4 (E.D. Va. Jan. 5, 2012).

Here, the undersigned finds that, under Rule 20, joinder of the Defaulting Defendants in a single action is proper because the facts established by the Verified Complaint raise common questions concerning the infringement of Plaintiff's rights in the '256 Patent. The undersigned further finds that the Defaulting Defendants may be joined under Rule 21 because "none of the

---

[5] Plaintiff's counsel, Kendal M. Sheets, Plaintiff served summons, complaint, and exhibits on the Defaulting Defendants as well as on Defendant Nos. 77, 80, 82, 93, 102, and 105. (Dkt. No. 113-1.)

defaulting defendant[s] . . . are prejudiced by joinder, as their liability is established by their own default." *LendingClub Bank v. LendingClub.com*, No. 1:22-cv-484, 2023 WL 2581308, at *4 (E.D. Va. Mar. 20, 2023).

### D.  Grounds for Entry of Default

Default judgment may be entered when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). Here, the Defaulting Defendants were served via email on January 30, 2025, and were required to file a responsive pleading by February 20, 2025. (*See* Dkt. No. 113-1; *see also* FED. R. CIV. P. 12(a).) To date, none of the Defaulting Defendants have filed a responsive pleading, and the time for doing so has expired. On March 13, 2025, Plaintiff filed a Request for Entry of Default. (Dkt. No. 113.) The Clerk of Court entered a default against the Defaulting Defendants on March 14, 2025. (Dkt. No. 114.) The undersigned finds that the Defaulting Defendants failed to file a responsive pleading in a timely manner, and that the Clerk of Court properly entered a default as to the Defaulting Defendants.

### E.  Liability

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or allegations regarding liability that are not well-pleaded. *Ryan*, 253 F.3d at 780. Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint states a claim upon which relief can be granted. To meet this standard, the complaint must set forth "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court may also consider "documents attached to the complaint and those incorporated by reference . . . ." *Audio MPEG, Inc. HP Inc. v. Societa Italiana Per Lo Sviluppo Dell' Elettronica Spa*, No. 2:15-cv-73, 2016 WL 7010947, at \*3 (E.D. Va. July 1, 2016) (citing *Pueschel v. United States*, 369 F.3d 345, 353 n.3 (4th Cir. 2004)). In determining whether allegations are plausible, the Court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

Plaintiff seeks default judgment against the Defaulting Defendants on its claim for infringement of the '256 Patent under 35 U.S.C. §§ 271(a)–(b). (Dkt. No. 1 ¶¶ 43–48 (Count I).) While Plaintiff's Verified Complaint does not specify separate counts of infringement of the '256 Patent, Plaintiff has alleged both direct infringement and indirect infringement of the '256 Patent. (*See id.* ¶¶ 44–45.) To prevail on a claim for indirect infringement, a plaintiff must first allege a claim for direct infringement. *Epcon Gas Systems, Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1033 (Fed. Cir. 2002). Accordingly, the undersigned first addresses Plaintiff's claim for direct infringement and then turns to Plaintiff's claim for indirect infringement.

### 1. *Direct Infringement*

Section 35 U.S.C. § 271(a) provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent thereof, infringes the patent." 35 U.S.C. § 271(a). "[D]irect infringement is a strict-liability offense that does not require knowledge of the patent or intent to infringe." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1377 (Fed. Cir. 2017); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 761 n.2 (2011) ("Direct infringement . . . require[s] no more than the unauthorized use of a patented invention."). Accordingly, to plead a claim for patent infringement, Plaintiff "must first identify

which patent claims the defendant infringed." *Chan Soo Kim v. Green Tea Ideas, Inc.*, No. 3:17-cv-449, 2018 WL 1172998, at *2 (E.D. Va. Mar. 6, 2018) (citing *Jenkins v. LogicMark, LLC*, No. 3:16-cv-751, 2017 WL 376154, at *3 (E.D. Va. Jan. 25, 2017)). Plaintiff "must also specify which features of an accused product correspond to the limitations in the allegedly infringed patent" and "identify with 'particularity *how* each allegedly infringing feature of the accused products infringes' the patent, literally or under the doctrine of equivalents. *Id.* (quoting *Jenkins*, 2017 WL 376154, at *3).

Here, Plaintiff's Verified Complaint contains factual allegations sufficient to state a claim for direct patent infringement. First, the Verified Complaint clearly identifies the '256 Patent as the patent at issue and alleges Plaintiff's right to enforce the '256 Patent. (Dkt. No. 1 ¶¶ 2, 29.) Second, the Verified Complaint alleges that Defendants do not enjoy or benefit from any rights in or to '256 Patent and details how the Accused Products sold by Defendants infringe, at a minimum, claim 1 of the '256 Patent. (*Id.* ¶¶ 18, 21–42.) Specifically, the Verified Complaint alleges that the Accused Products "include a base having a fuel chamber portion and conduit portion with a channel to an aperture, where when the fuel in the fuel chamber portion is ignited, the channel facilitates flow of smoke downward from the fuel chamber portion through the aperture and thus directly . . . infringe claims 1–19 of the '256 Patent." (Dkt. No. 1 ¶ 31.) Third, the Verified Complaint alleges that Defendants infringe the '256 Patent by "making, using, offering to sell, selling and/or importing into the United States, devices for imparting smoked flavors to beverages and foodstuffs, that infringe the asserted claims in the United States." (*Id.* ¶ 30.) The undersigned finds that these allegations are sufficient to establish a plausible claim for direct infringement of the '256 Patent.

10

### 2. *Indirect Infringement*

Plaintiff also alleges that Defendants are liable for indirect infringement of the '256 Patent. (Dkt. No. 15 ¶ 45.) Indirect infringement can occur by inducing or contributing to the direct infringement of a patent. 35 U.S.C. §§ 271(b)–(c). Plaintiff asserts that Defendants are liable for indirect infringement under the inducement theory. (*Id.* ¶¶ 30–32, 34, 45.) Unlike direct infringement, indirect infringement requires the infringer's knowledge that "the induced acts constitute patent infringement." *Global-Tech Appliances*, 563 U.S. at 764. Because the undersigned finds that the Verified Complaint states a claim for direct patent infringement under 35 U.S.C. § 271(a), and because any type of infringement will justify the relief requested by Plaintiff, the undersigned does not address Plaintiff's additional theory of indirect infringement.

## F. Requested Relief

In the Memorandum in Support of Plaintiff's Motion for Default Judgment, Plaintiff requests a damages award, injunctive relief, and attorneys' fees and costs. (Dkt. No. 117 at 15.) The undersigned considers each form of requested relief in turn.[6]

### 1. *Damages*

Unlike liability, allegations concerning damages are not admitted upon default. *See* FED. R. CIV. P. 8(b)(6). Instead, the Court "must make an independent determination regarding damages." *Wilcox v. Transmodal Solutions, LLC*, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020) (citation and quotation marks omitted).

Under the Patent Act, when a plaintiff establishes infringement of a utility patent, "the court shall award the claimant damages adequate to compensate for the infringement, but in no

---

[6] While Plaintiff's proposed order includes an award of attorneys' fees and costs, Plaintiff did not request an award of attorneys' fees and costs in its Verified Complaint or Memorandum in Support of Motion for Default Judgment. (*See* Dkt. No. 214-2.) Accordingly, the undersigned does not recommend an award that includes them.

11

event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. Thus, utility patent infringers may be liable for lost profits or a reasonable royalty. *See Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1445 (Fed. Cir. 1990) ("The two methods by which damages are usually calculated under § 284 are assessment of actual damages (the profits the patentee lost due to the infringement) or, if actual damages cannot be ascertained, determination of a reasonable royalty."). Damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

Here, Plaintiff "has decided to only seek a reasonable royalty from each defendant and not seek lost profits." (Dkt. No. 124 at 1.) Plaintiff requests that the Court calculate damages using the "reasonabl[e] royalty rate of $5.00 per unit, determined by Thousand Oaks CEO Bryan Weisberg." (Dkt. No. 117 at 15.) In his declaration filed in support of Plaintiff's Motion for Default Judgment, Mr. Weisberg states that he oversaw "the licensing of Thousand Oaks' patent rights for the design patent U.S. Patent No. D944,594 (the ''D594 Patent') titled 'Smoker Device'" in a prior case against "Schedule A" defendants, *TOB LLC v. The Partnerships, etc.*, Case No. 1:23-cv-3378 (D. Ill. May 30, 2023).[7] (Dkt. No. 117-1 ¶ 5.) In that case, "[m]ost of the [80] licensees paid five dollars per unit sold . . . ." (*Id.* ¶ 6.) Based on his knowledge of the industry and experience negotiating licenses in the Northern District of Illinois case, related cases in this District involving the '256 Patent,[8] and the instant case, Mr. Weisberg asserts that "a reasonable

---

[7] In that case, the U.S. District Court for the Northern District of Illinois found that the Schedule A defendants were liable for infringement of two of Thousand Oaks' design patents—D944,594 S and D976,646 S.

[8] The related cases are *Thousand Oaks Barrel Co. LLC v. The Partnerships, etc.*, Case No. 1:23-cv-1560 (E.D. Va. Nov. 11, 2023), *Thousand Oaks Barrel Co. LLC v. The Partnerships, etc.*, Case No. 1:23-cv-1563 (E.D. Va. Nov. 11, 2023), and *Thousand Oaks Barrel Co. LLC v. The Unincorporated Associations, etc.*, Case No. 1:24-cv-958 (E.D. Va. Nov. 20, 2024). Plaintiff "has granted approximately 250 licenses to the '256 Patent to Schedule A Defendants."

royalty for the remaining Schedule A Defendants should be five dollars per infringing unit sold."

(*Id.* ¶ 7.)

Using the five dollar per infringing unit royalty rate and sales data received from Amazon.com, Temu.com, Walmart.com, and Ebay.com,[9] Mr. Weisberg calculated the royalties owed by the Defaulting Defendants as follows (*id.* ¶ 14):

| Defendant No. | Seller Name (Sch. A) | Seller ID | Infringing Units Sold | Calculated Royalty ($US) |
|---|---|---|---|---|
| 3 | FengQiLinLang | A3CMJ53MF27LJ3 | 143 | $715.00 |
| 7 | Moskiboly US | A3G3QDDEFSM9S3 | 2,963 | $14,815.00 |
| 9 | Ruihailu | A25BOKRFXR3NWL | 0 | $0.00 |
| 10 | BARREL & LEAF | A3O8HSUVYR2ZZX | 1 | $5.00 |
| 12 | THOMSELEUS | A2GWNN4OTZXPJZ | 0 | $0.00 |
| 14 | Hyper Bloom | A1L6QNSOOUZIDQ | 72 | $360.00 |
| 19 | Dignity Boutique | A15CW7NRR0SVVU | 296 | $1,480.00 |
| 22 | GOG Green | 6150105691219 | 11 | $55.00 |
| 23 | YU CONG | 634418214597549 | 140 | $700.00 |
| 24 | Golden Autumn October Event | 634418215897180 | 11 | $55.00 |
| 25 | Fadanny | 634418211294623 | 1 | $5.00 |
| 32 | J30655'shop | 634418210625550 | 63 | $315.00 |
| 35 | Legendary instrument | 634418211842521 | 68 | $340.00 |
| 37 | HK Atti | 634418211362971 | 13 | $65.00 |

(Dkt. No. 117-1 ¶ 6.) Most of the licensees in those cases paid five dollars per unit sold, as well. (*See* Dkt. No. 215 at 10.)

[9] The "Infringing Webstores provided the sales data to Kendal Sheets, counsel for Plaintiff in this matter. In his declaration filed in support of Plaintiff's Motion for Default Judgment, Mr. Sheets states that he requested "contact and sales information of the defendants," and that Amazon.com, Temu.com, Walmart.com, Ebay.com, and AliExpress.com "sent Mr. Sheets several spreadsheets with the requested information." (Dkt. No. 117-2 ¶¶ 5–6.) Mr. Weisberg attests that the sales data he references in his declaration in support of Plaintiff's Motion for Default Judgment "are true and correct copies of the data contained in the Amazon.com, Temu.com, Walmart.com, Ebay.com ,and AliExpress.com worksheets relating to each of the remaining Schedule A Defendants in this case." (Dkt. No. 117-1 ¶ 8.)

| Defendant No. | Seller Name (Sch. A) | Seller ID | Infringing Units Sold | Calculated Royalty ($US) |
|---|---|---|---|---|
| 38 | Qiaomi Shop | 634418210403311 | 94 | $470.00 |
| 45 | caleforra | 634418218336470 | 0 | $0.00 |
| 46 | CRILANO | 634418213150331 | 8 | $40.00 |
| 47 | private cipher | 634418217201730 | 1 | $5.00 |
| 48 | BIHAIT | 4947439556041 | 42 | $210.00 |
| 50 | Comfort Under | 634418210636175 | 0 | $0.00 |
| 57 | Biobubana Direct | 10001368266 | 20 | $100.00 |
| 59 | HualinWM store | 10001195973 | 28 | $140.00 |
| 63 | do2top | 1496799281 | 9 | $45.00 |
| 70 | shnoopshop | 2626309677 | 2 | $10.00 |
| | | Total | 3,986 | $19,930.00 |

With respect to the remaining Infringing Webstore, AliExpress.com, Plaintiff requested the number of units sold but AliExpress.com refused to provide that information and instead, "only provided Thousand Oaks with a total amount of balance in each seller's US Account that were the result of the net profit of infringing units sold." (Dkt. No. 117-1 ¶ 16; see also Dkt. No. 124-2 at 1–5 (Financial and Sales Data Produced by AliExpress.com In Response to Plaintiff's Discovery Requests).) Working backwards from the net funds reported by AliExpress.com, Mr. Weisberg determined the retail price of the infringing unit and assumed a 50% profit margin to calculate the estimated number of units sold. (Dkt. No. 124 at 2–4.) Mr. Weisberg then multiplied that estimated number of units sold by the five-dollar royalty rate—as reflected in the table below.[10] (*Id.*)

---

[10] In the table, "[t]he blank rows are sellers with no balance or a balance under $1.00 in their accounts." (Dkt. No. 124 at 3).

14

| Defendant No. | Seller Name (Sch. A) | Total Net Funds of Infringing Units Sold | Retail Price of Infringing Unit | Estimated No. of Infringing Units Sold | Calculated Royalty ($US) |
|---|---|---|---|---|---|
| 74 | JR Bar Supplies Store | $3,924.23 | 0.99 | 3,964 | $19,819 |
| 75 | Real Buy Buy Store | | | | |
| 76 | Appeal Store | $226.81 | 0.99 | 229 | $1,146 |
| 78 | Hysen Store | | | | |
| 79 | RYRA Factory Direct Store | | | | |
| 81 | XiaoHE Kitchen Store | | | | |
| 83 | AliExpress Store | $128.72 | 1.86 | 69 | $346 |
| 84 | Lemaw Store | $108.23 | 2.12 | 51 | $255 |
| 85 | Boutique Home Furnishings. Store | | | | |
| 86 | Choice Specialty Store | | | | |
| 87 | Global Home Store | $1,137.15 | 0.99 | 1,149 | $5,743 |
| 88 | GlasswareBarware Stuff Store | $3,411.57 | 1.26 | 2,708 | $13,538 |
| 89 | Shop1104001944 Store | $1,570.51 | 0.99 | 1,586 | $7,932 |
| 90 | Rice Store | $321.11 | 1.48 | 217 | $1,085 |
| 91 | XiaoMjia Store | | | | |
| 92 | Wiener Home Life Store | $88.56 | 5.64 | 16 | $79 |
| 94 | Unoflo Home Store Store | | | | |
| 95 | YaHi Home Store | | | | |
| 96 | Shop1102856948 Store | | | | |

| Defendant No. | Seller Name (Sch. A) | Total Net Funds of Infringing Units Sold | Retail Price of Infringing Unit | Estimated No. of Infringing Units Sold | Calculated Royalty ($US) |
|---|---|---|---|---|---|
| 98 | Marke Store | | | | |
| 99 | Happiness Kitchenware Store | $40.70 | 0.99 | 41 | $206 |
| 100 | DailyHouse Store | | | | |
| 101 | MTOTM PRO Store | $98.91 | 0.99 | 100 | $500 |
| 103 | Samyoung Official Store | | | | |
| 104 | Shop1103810176 Store | | | | |
| 106 | Smile Life-Home Store | | | | |
| 107 | VERDIOS PRO Store | $397.52 | 9.79 | 41 | $203 |
| | | | | Total  10,171 | $50,852.00 |

In total, Mr. Weisberg asserts that Plaintiff is owed $70,782.00 in damages as a result of the Defaulting Defendants' infringement of the '256 Patent. (*Id.*) The undersigned finds that Mr. Weisberg's computation method of five dollars per infringing unit sold by the Defaulting Defendants and the separate computation method for the AliExpress.com Default Defendants are supported by the evidence presented. Therefore, the undersigned finds that Plaintiff should be awarded compensatory damages in the amount of $70,782.00.

2. *Permanent Injunction*

Plaintiff requests that the Court "convert the preliminary injunction into a permanent injunction to prevent further unlawful conduct by the Defaulting Defendants." (Dkt. No. 117 at 17.) The Patent Act provides that courts "may grant injunctions in accordance with the principles

16

of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.  To obtain a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

This Court previously granted Plaintiff's request for a TRO.  (Dkt. No. 19 at 2.)  The Court also granted Plaintiff's request for a preliminary injunction, finding that (1) Plaintiff is "likely to succeed on the merits of its utility patent infringement claim;" (2) Plaintiff will suffer irreparable harmed absent an injunction because there is "substantial reason to believe that Defendants are likely to transfer their assets out of any account in the United States upon learning of this lawsuit or any judgment against them, which would deprive Plaintiff of the ability to obtain damages;" (3) the balance of equities tilts in Plaintiff's favor; and (4) "the public interest is served by preventing consumer confusion and vindicating patent rights." (Dkt. No. 97 at 1–2.)

For similar reasons, the undersigned finds that a permanent injunction is appropriate here. First, Plaintiff has suffered and will continue to suffer irreparable injury.  The Defaulting Defendants operate the Infringing Webstores, which advertise, promote, offer for sale, and sell Accused Products.  (Dkt. No. 1 ¶ 6.)  There is good cause to believe that the Accused Products will continue to appear in the marketplace, and that consumers are likely to be misled, confused, and/or disappointed by the quality of these products. (*Id.* ¶¶ 15, 16, 40, 47, 48.)  Additionally, the Defaulting Defendants' sales compete directly with Plaintiff's sales, and Plaintiff will continue to suffer losses in sales and of reputation absent an injunction.  (*Id.* ¶ 16.)

17

Second, other remedies at law are inadequate to compensate Plaintiff. *See Hybritech Inc. v. Abbott Lab'ys*, 849 F.2d 1446, 1456–57 (Fed. Cir. 1988) ("It is well-settled that, because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole."). Despite receiving proper service of process, the Defaulting Defendants have failed to respond to this lawsuit. This lack of an appropriate response demonstrates a near certainty of continuing patent infringement and makes it impossible to determine the actual profits and damages in the case. There is also reason to believe that the Defaulting Defendants are likely to transfer their assets out of any account in the United States upon learning of any judgment against them, which would deprive Plaintiff of the ability to obtain damages. (Dkt. No. 97 at 2); *see also Volkswagen Group of America, Inc. v. Unincorporated Ass'ns*, No. 1:19-cv-1574, 2020 WL 4283925, at * (E.D. Va. Dec. 20, 2019).

Third, the balance of hardships weighs in Plaintiff's favor. The only hardship the Defaulting Defendants would experience from a permanent injunction would be the requirement to follow clearly established patent law. Plaintiff, on the other hand, stands to lose profits and suffer a continued infringement of its legal rights, which far outweigh any purported hardship that the Defaulting Defendants may face.

Fourth, the public interest favors an injunction. Granting injunctive relief in this matter would do nothing to disserve the public. *Christopher Phelps & Assocs.*, 492 F.3d at 545. Rather, an injunction would prevent confusion, enforce Plaintiff's legal rights, and prevent the public from being misled into believing the Defaulting Defendants' products are associated with Plaintiff and its goodwill and reputation. The undersigned thus finds that injunctive relief is appropriate and

18

the best means to prevent future harm to Plaintiff due to the Defaulting Defendants' continuing infringement and failure to respond to this lawsuit.

### 3. Attorneys' Fees

Thousand Oaks requests the Court hold that the actions of the Defaulting Defendants are "exceptional" under 35 U.S.C. § 285 and award Thousand Oaks' attorneys' fees and costs. In "exceptional" patent infringement cases, courts may award attorneys' fees to the prevailing party. 35 U.S.C. § 285. Construing the word "exceptional . . . in accordance with [its] ordinary meaning," the Supreme Court explained that an exceptional case:

> is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). Under the standard adopted in *Octane Fitness*, "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 555. When weighing the evidence to determine whether a case is exceptional, the court may "consider a nonexclusive list of factors, including frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (internal quotations omitted). Any such exceptional case determination must find support in a preponderance of the evidence. *Id.* at 557–58.

Plaintiff argues that the Defaulting Defendants' failure to appear and defend the instant case "permits an inference of willfulness," which, in turn, makes the case "exceptional." (Dkt. No. 117 at 22.) The undersigned finds that the Defaulting Defendants did not litigate this case in a reasonable manner considering that they have not responded at all. *See Moreland v. Pal of Mine*

19

*Corp.*, No. 2:23-CV-211, 2024 WL 3937267, at \*8 (E.D. Va. Aug. 26, 2024) (applying *Octane Fitness* in a trademark infringement case and granting plaintiffs' request for attorneys' fees in their motion for default judgment); *see also Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015) (adopting the *Octane Fitness* standard in a Lanham Act case). The Defaulting Defendants' "disregard for this litigation creates an exceptional case that 'stands out from others' and justifies an award of reasonable attorneys' fees." *Id.* (citing *Octane Fitness, LLC*, 572 U.S. at 554); *see also Agio Int'l Co., Ltd. v. Zhejiang Longda Forge Co.*, No. 1:15-CV-00192-MR, 2023 WL 2339890, at \*5 (W.D.N.C. Feb. 28, 2023) (finding that the defendant's "failure to participate in the current litigation" was one of the factors that "render[s] this case exceptional and warrant[s] the award of attorney's fees"). Accordingly, the undersigned finds that Plaintiff is entitled to recover reasonable attorneys' fees incurred in litigating this action.

Likewise, Plaintiff also requests an award of reasonable costs. ( Dkt. No. 117 at 22.) The Patent Act provides that "[u]pon finding for the claimant the court shall award the claimant damages . . . together with . . . costs as fixed by the court." 35 U.S.C. § 284; *see also* Fed. R. Civ. P. 54(d)(1). Having found that the Defaulting Defendants are liable for infringement of the '256 Patent, the undersigned further finds that Plaintiff is entitled to recover reasonable costs incurred in litigating this action.

### G. Recommendations

For the reasons stated above, the undersigned makes the following recommendations:

1. GRANT Plaintiff's Motion for Default Judgment (Dkt. No.116);

2. Enter default judgment in favor of Plaintiff and against the Defaulting Defendants;

3. Order that judgment by default in the amount totaling $70,782.00 is entered against Defaulting Defendants, in accordance with the table below, with an additional sum of reasonable attorneys' fees and costs, in amounts to be determined by the Court;

4. Convert the preliminary injunction into a permanent injunction against the Defaulting

Defendants, thereby enjoining them from further infringement of the '256 Patent; and

5.  Order that Plaintiff file any motion for attorneys' fees and costs within a reasonable time.

| Defendant No. | Seller Name (Sch. A) | Seller ID | Infringing Units Sold | Calculated Royalty ($US) |
|---|---|---|---|---|
| 3 | FengQiLinLang | A3CMJ53MF27LJ3 | 143 | $715.00 |
| 7 | Moskiboly US | A3G3QDDEFSM9S3 | 2,963 | $14,815.00 |
| 9 | Ruihailu | A25BOKRFXR3NWL | 0 | $0.00 |
| 10 | BARREL & LEAF | A3O8HSUVYR2ZZX | 1 | $5.00 |
| 12 | THOMSELEUS | A2GWNN4OTZXPJZ | 0 | $0.00 |
| 14 | Hyper Bloom | A1L6QNSOOUZIDQ | 72 | $360.00 |
| 19 | Dignity Boutique | A15CW7NRR0SVVU | 296 | $1,480.00 |
| 22 | GOG Green | 6150105691219 | 11 | $55.00 |
| 23 | YU CONG | 634418214597549 | 140 | $700.00 |
| 24 | Golden Autumn October Event | 634418215897180 | 11 | $55.00 |
| 25 | Fadanny | 634418211294623 | 1 | $5.00 |
| 32 | J30655'shop | 634418210625550 | 63 | $315.00 |
| 35 | Legendary instrument | 634418211842521 | 68 | $340.00 |
| 37 | HK Atti | 634418211362971 | 13 | $65.00 |
| 38 | Qiaomi Shop | 634418210403311 | 94 | $470.00 |
| 45 | caleforra | 634418218336470 | 0 | $0.00 |
| 46 | CRILANO | 634418213150331 | 8 | $40.00 |
| 47 | private cipher | 634418217201730 | 1 | $5.00 |
| 48 | BIHAIT | 4947439556041 | 42 | $210.00 |
| 50 | Comfort Under | 634418210636175 | 0 | $0.00 |
| 57 | Biobubana Direct | 10001368266 | 20 | $100.00 |
| 59 | HualinWM store | 10001195973 | 28 | $140.00 |
| 63 | do2top | 1496799281 | 9 | $45.00 |
| 70 | shnoopshop | 2626309677 | 2 | $10.00 |

| Defendant No. | Seller Name (Sch. A) | Seller ID | Infringing Units Sold | Calculated Royalty ($US) |
|---|---|---|---|---|
| 74 | JR Bar Supplies Store | | 3,964 | $19,819 |
| 75 | Real Buy Buy Store | | | |
| 76 | Appeal Store | | 229 | $1,146 |
| 78 | Hysen Store | | | |
| 79 | RYRA Factory Direct Store | | | |
| 81 | XiaoHE Kitchen Store | | | |
| 83 | AliExpress Store | | 69 | $346 |
| 84 | Lemaw Store | | 51 | $255 |
| 85 | Boutique Home Furnishings. Store | | | |
| 86 | Choice Specialty Store | | | |
| 87 | Global Home Store | | 1,149 | $5,743 |
| 88 | GlasswareBarware Stuff Store | | 2,708 | $13,538 |
| 89 | Shop1104001944 Store | | 1,586 | $7,932 |
| 90 | Rice Store | | 217 | $1,085 |
| 91 | XiaoMjia Store | | | |
| 92 | Wiener Home Life Store | | 16 | $79 |
| 94 | Unoflo Home Store Store | | | |
| 95 | YaHi Home Store | | | |
| 96 | Shop1102856948 Store | | | |
| 98 | Marke Store | | | |
| 99 | Happiness Kitchenware Store | | 41 | $206 |

| Defendant No. | Seller Name (Sch. A) | Seller ID | Infringing Units Sold | Calculated Royalty ($US) |
|---|---|---|---|---|
| 100 | DailyHouse Store | | | |
| 101 | MTOTM PRO Store | | 100 | $500 |
| 103 | Samyoung Official Store | | | |
| 104 | Shop1103810176 Store | | | |
| 106 | Smile Life-Home Store | | | |
| 107 | VERDIOS PRO Store | | 41 | $203 |
| | | Total | 14,157 | $70,782.00 |

## H. Notice

Through the Court's electronic filing system and by email, as described below, the Defaulting Defendants are notified that objections to this Report and Recommendation must be filed within 14 days of service of this Report and Recommendation, and a failure to file timely objections waives appellate review of the substance of the Report and Recommendation and waives appellate review of any judgment or decision based on the proposed findings of fact and recommendations therein. Plaintiff is directed to email a copy of this Report and Recommendation to the Defaulting Defendants at each Defendant's verified email addresses, consistent with Plaintiff's service of the Motion for Default Judgment on the Defaulting Defendants. (*See* Dkt. No. 119.)

ENTERED this 29th day of October, 2025.

_____/s/_____
Lindsey Robinson Vaala
United States Magistrate Judge

Alexandria, Virginia

23